

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

TODD C. BANK, Individually and on
Behalf of All Others Similarly Situated,

                                        *Plaintiff,*

                    -against-

ALLIANCE SECURITY INC., MONITRONICS
INTERNATIONAL, INC., UTC FIRE & SECURITY
AMERICAS CORPORATION, INC., doing business as
GE SECURITY, and VERSATILE MARKETING
SOLUTIONS, INC., doing business as VMS ALARMS,

                                        *Defendants.*

**CLASS-ACTION
COMPLAINT**

## INTRODUCTION

1.      This action arises out of telephone calls, made by or on behalf of Defendants, using

an artificial or prerecorded voice that delivered a message that advertised the commercial availability

or quality of a home-security system (the "Security-System Robocalls").

2.      The legal claims arise under one federal statute and three New York statutes: the

Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), New York General Business Law

§ 349, New York General Business Law § 350, and New York General Business Law § 399-p.

3.      Plaintiff brings this action individually and as a class action on behalf of all persons

to whose residential or cellular telephone number one or more Security-System Robocalls was placed

(the "Federal Class") during the period beginning four years prior to the commencement of this

action until the date of said commencement (the "Federal Class Period").

4.      Plaintiff also brings this action individually and as a class action on behalf of all

persons who received a Security-System Robocall on a New York telephone number, *i.e.* a telephone

number having an area code of 212, 315, 347, 516, 518, 585, 607, 632, 656, 716, 718, 845, 914, 917,

1

or 929 (the "New York Class"), during the period beginning three years prior to the commencement of this action until the date of said commencement (the "New York Class Period").

5.      Plaintiff seeks, individually and on behalf of the other Federal Class Members and New York Class Members, statutory damages, injunctive relief, legal fees, and costs.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over Plaintiff's federal-law claims under 28 U.S.C. § 1331, and has jurisdiction over Plaintiff's state-law claims under 28 U.S.C. §§ 1332(d)(2)(A) and 1367(a).

7.      The matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs.

8.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2).

## PARTIES

9.      Plaintiff, Todd C. Bank ("Bank"), is a citizen of the state of New York, and was and is, at all relevant times herein, a resident of the Eastern District of New York.

10.     Defendant, Alliance Security Inc. ("Alliance Security"), was and is, at all relevant times herein, a corporation organized and existing under the laws of Delaware, and maintains its principal place of business at 60 Jefferson Park Road, Warwick, Rhode Island 02888.

11.     Defendant, Monitronics International, Inc. ("Monitronics"), was and is, at all relevant times herein, a corporation organized and existing under the laws of Texas, and maintains its principal place of business at 2350 Valley View Lane, Suite 100, Dallas, Texas 75234.

12.     Defendant, UTC Fire & Security Americas Corporation, Inc. ("UTC"), doing business as GE Security, was and is, at all relevant times herein, a corporation organized and existing under the laws of Delaware, and maintains its principal place of business at 3211 Progress Drive, Lincolnton, North Carolina 28092.

13.     Defendant, Versatile Marketing Solutions, Inc. ("VMS"), doing business as VMS Alarms, was and is, at all relevant times herein, a corporation organized and existing under the laws of Massachusetts, and maintains its principal place of business at 60 Jefferson Park Road, Warwick, Rhode Island 02888.

**APPLICABLE LAW**

**A.      Regulation of Certain Calls to Residential and Cellular Telephone Numbers**

      **(i)      Telephone Consumer Protection Act, 47 U.S.C. 227 ("TCPA")**

14.     Section 227(b) of the TCPA regulates so-called "robocalls," which are calls placed using an automated telephone dialing system ("ATDS"), and calls using an artificial or prerecorded voice.

15.     With respect to residential telephone lines, the statute prohibits all calls using an artificial or prerecorded voice, other than emergency calls or calls made with prior express consent of the called party. *See* 47 U.S.C. § 227(b)(1)(B).

16.     Regarding telephone numbers assigned to a cellular telephone service, the statute prohibits calls using an artificial or prerecorded voice, and ATDS calls, other than emergency calls or calls placed with the prior express consent of the called party. *See* 47 U.S.C. § 227(b)(1)(A).

17.     Recipients of calls that are made in violation of 47 U.S.C. § 227(b)(1) may bring an action to recover, for each violation, the greater of the monetary loss caused by the violation or $500. *See* 47 U.S.C. § 227(b)(3). If the court finds that a defendant willfully or knowingly violated Section 227(b), the court may increase the award by up to $1,000 per violation. *See id.*

      **(ii)     Liability of Entities That Do Not Directly Place Illegal Calls**

18.     As explained by the FCC, the TCPA and its regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *Rules*

*and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Mem. and Order, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995); *see also Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Request of State Farm Mutual Automobile Insurance Company for Clarification and Declaratory Ruling, Declaratory Ruling, 20 FCC Rcd. 13664, 13667, ¶ 7 (2005) ("a company on whose behalf a telephone solicitation is made bears the responsibility for any violation of our telemarketing rules, and calls placed by a third party on behalf of that company are treated as if the company itself placed the call."); *In re Joint Pet. Filed by Dish Network*, 28 FCC Rcd. 6574 (2013) (with respect to violations of Section 227(b), a seller can be vicariously liable for unlawful calls placed by third parties). *Accord, Savanna Group., Inc. v. Trynex, Inc.*, No. 10 -cv-7995, 2013 WL 4734004, at *5 (N.D. Ill. Sept. 3, 2013); *Mey v. Monitronics Int'l, Inc.*, 5:11-cv-90, 2013 WL 4105430, at *4-*5 (N.D. W. Va. Aug. 14, 2013); *Thomas v. Taco Bell Corp.*, 879 F. Supp. 2d 1079, 1084-1085 (C.D. Cal. 2012);

**B.    New York General Business Law § 349**

19.    New York General Business Law § 349(a) prohibits deceptive acts or practices in the conduct of any business, trade, or commerce, or in the furnishing of any service, in New York.

20.    Persons whose rights under Section 349(a) are violated are entitled, pursuant to New York General Business Law § 349(h), to the greater of actual damages or $50 per violation, injunctive relief, and reasonable legal fees; and, in the event that the violations were committed willfully or knowingly, three times their actual damages, in a total amount of up to $1,000.

**C.    New York General Business Law § 350**

21.    New York General Business Law § 350 prohibits false advertising in the conduct of any business, trade, or commerce, or in the furnishing of any service, in New York.

22.    Persons whose rights under Section 350 are violated are entitled, pursuant to New

York General Business Law § 350-e(3), to the greater of actual damages or $500 per violation, injunctive relief, and reasonable legal fees; and, in the event that a violation was committed willfully or knowingly, three times their actual damages, in a total amount of up to $10,000.

**D.      New York General Business Law § 399-p**

23.      New York General Business Law § 399-p(3)(a) requires that, whenever telephone calls are placed through the use of an automatic dialing-announcing device, such device shall state, at the beginning of the call, the name of the person transmitting the message, or the name of the person on whose behalf the message is being transmitted, and, at the end of such message the address and telephone number of the person on whose behalf the message is transmitted, provided that such disclosures are not otherwise prohibited or restricted by any federal, state, or local law.

24.      New York General Business Law § 399-p(4) prohibits the operation of an automatic dialing-announcing device that uses a random or sequential number generator to produce a number to be called.

25.      Persons whose rights under Section 399-p are violated are entitled, pursuant to New York General Business Law § 399-p(9), to the greater of actual damages or $50 per violation, injunctive relief, and reasonable legal fees; and, in the event that a violation was committed willfully or knowingly, three times their actual damages, in a total amount of up to $1,000.

## FACTS

**A.      The Defendants**

26.      Alliance Security has been, as of February 20, 2014, the new corporate name of VMS. VMS and Alliance are collectively referred to herein as "VMS/Alliance."

27.      Monitronics is a provider of monitoring services for residential and commercial electronic security and alarm equipment through its central monitoring station located in Dallas,

Texas, for which Monitronics charges a monthly fee.

28.     According to the 10-K filing with the United States Securities and Exchange Commission of Monitronics's parent company, Ascent Capital Group Inc., for the fiscal year ending December 31, 2011, filed on or about February 29, 2012 ("2011 10-K"):

> Through our wholly-owned subsidiary, Monitronics, we are primarily engaged in the business of providing security alarm monitoring services: monitoring signals from burglaries, fires, medical alerts, and other events, as well as, providing customer service and technical support. Monitronics is the third largest alarm monitoring company in the United States, with over 700,000 subscribers under contract. With subscribers in all 50 states, the District of Columbia, Puerto Rico, and Canada, Monitronics provides a wide range of mainly residential security services including hands-free two-way interactive voice communication with the monitoring center, cellular options, and an interactive service option which allows the customer to control their security system remotely using a computer or smart phone. Monitronics was incorporated in 1994 and is headquartered in Dallas, Texas.

29.     Most of Monitronics's customers are residential homeowners.

30.     UTC is a manufacturer of residential and commercial electronic security and alarm systems.

31.     According to UTC's web site, http://www.utcfireandsecurity.com, "[w]e install, service and monitor only proven and effective intruder alarm systems that offer protection for people and property in a wide variety of applications. We provide solutions that cover residential and small businesses right through to large corporations and government departments."

32.     VMS/Alliance is a seller, or dealer, of residential and commercial electronic security and alarm equipment and monitoring services.

**B.      The Relationships Amongst the Defendants**

33.     VMS/Alliance receives payments or equipment discounts when it sells UTC's alarm systems and when it assigns alarm-monitoring contracts to Monitronics.

34.    To facilitate the sales, UTC and Monitronics permit VMS/Alliance to use their trademarks and trade names, access their proprietary customer-service databases and pricing information, and hold themselves out as authorized dealers of UTC and Monitronics.

35.    Monitronics has described VMS/Alliance as a "great representation[] of the Monitronics dealer network and the entire security industry." http://blog.monitronics.net/?paged=9; https://www.facebook.com/MonitronicsExperience/posts/342587325835928

36.    According to a 2013 VMS/Alliance job posting, VMS/Alliance was the "Monitronics Dealer of the Year" in 2010, 2011, [and] 2012." https://www.ziprecruiter.com/job/Call-Center-Activation-Agent/8cba338f/?source=cpc-simplyhired; https://www.linkedin.com/company/-alliance-home-protection

37.    VMS/Alliance sells or assigns alarm-monitoring contracts to Monitronics for a specified price per contract.

38.    VMS/Alliance uses the names Monitronics and GE Security in its marketing efforts, and is authorized to do so by Monitronics and UTC, respectively.

39.    The 2011 10-K stated that "[a]uthorized dealers may use the Monitronics brand name in their sales and marketing activities," and that Monitronics "makes available sales, business and technical training, sales literature, co-branded marketing materials, sales leads and management support to its authorized dealers."

## C.    The Security-System Robocalls

40.    Since at least September, 2009, Defendants have been responsible for the making of millions of Security-System Robocalls by third parties known as "lead generators."

41.    A lead generator is a person or entity that finds potential customers for another party, upon which the lead generator enables communications between the potential customers and the

other party.

42.     The Security-System Robocalls play a prerecorded message promising recipients a

free security system in exchange for the recipients' placement of a small sign in their yard.

43.     The messages played during the Security-System Robocalls are identical, or similar,

to the following:

> The FBI reports there is a crime every fifteen seconds. It is also
> reported that one in three people over the age of sixty-five fall in any
> given year. Do not become one of these statistics. Press one now to
> find out how you can get a complete security system with installation.
> Thank you and congratulations. If you would like to have your phone
> number removed, press two now. Otherwise, press one to speak to a
> representative. Thank you. and The FBI reports there is a home break
> in every fifteen seconds. Your local police recommend you protect
> your home. If you would allow us to stick a small sign in your yard,
> we will install a new security system at absolutely no cost to you
> whatsoever. To hear more, press one now. To be placed on our do not
> call list, press nine.

44.     The following appears on Monitronics's web site:

> There is a burglary approximately every 15 seconds in the United
> States and homes without alarm systems are 3 times more likely to be
> targeted. With a home security system monitored by Monitronics,
> we'll help you protect your home against these dangers.
>
> Not only does a home security system package include the latest
> state-of-the-art security equipment, each package comes with
> world-class CSAA [Central Station Alarm Association] Five
> Diamond Certificated monitoring by our trained operators 24 hours
> a day, 7 days a week and 365 days a year, providing an added
> measure safety in your home.
>
> Along with advanced intrusion protection, Authorized Monitronics
> Dealers go above and beyond to help ensure your protection by
> offering exclusive life safety features that enhance your well-being.
> Monitoring services are available for medical, smoke and fire, and
> carbon monoxide emergencies, helping keep you safe from hidden
> dangers within your home.
>
> Take a look at the tailored home security packages offered by your
> local Authorized Monitronics Dealer. They can provide your family

with the protection and peace of mind you deserve.

http://www.monitronics.com/home-security-packages

45.     The Security-System Robocalls are made with automatic equipment that incorporates a storage capability of telephone numbers to be called and is used, working alone or in conjunction with other equipment, to randomly, or sequentially, disseminate a prerecorded message to the telephone number called without the use of an operator.

46.     A recipient who presses a key to "hear more" is connected to a live representative or is told that a live representative will make a separate call to the recipient, and the live representative informs the recipient that, in order to obtain a free security system, the recipient must agree to pay a monthly monitoring fee for a period of years.

47.     The placement of "a small sign in []a recipients's] yard" had no bearing on the price that the recipient would be charged in connection with a security system.

48.     It is not possible to obtain a security system without incurring fees.

49.     Upon information and belief, the lead generators that place the Security-System Robocalls utilize numerous "spoofed" telephone numbers that display on called parties' caller-identification screens so that recipient and regulators cannot easily determine the identities of the callers or the true source of the calls.

50.     From at least as early as May 26, 2012, to at least May 15, 2013, VMS/Alliance stated on one of its web sites, www.alliancesecurityinc.com, the following, in a form that is identical or nearly so:

**Monitoring**

**How does it work?**

**Digital:**
Monitronics Digital Monitoring

9

If your alarm is triggered while armed, you will immediately receive a phone call from one of Monitronics' CSAA Certified operators who will ask you for your password. If it is a false alarm and the password is correct, no further action is taken. However if you give the wrong password or ask for assistance, the operator will immediately dispatch the proper authorities while staying on the phone with you until help arrives.

**Two-Way Interactive Audio Verification®:**
Home Alarm Monitoring Services. We also offer Two-Way Interactive Audio Verification monitoring. This means that instead of calling your phone, the operator can speak to you and you can respond directly through the keypad. There are many advantages of Two-Way Interactive Audio Verification monitoring. First of all, you do not need to be near a phone or capable of picking up a phone should you be injured and in need of assistance. Second, a burglar can hear the operator and will often be scared off. It is also advantageous for the operator to be able to hear what is going on in the home should there be a problem. With both Digital and Two-Way Interactive Audio Verification, Alliance Security alarms are monitored 24/7 by Monitronics trained professionals. 100% of Monitronics operators are certified by the Central Station Operator Training Course. Monitronics protects over 1.3 million customers nationwide providing a fast, efficient emergency response.

**More than burglary protection**

Protecting your home with monitored security and fire alarm systems that include monitored smoke detection is a wise choice. The sooner a fire is detected and emergency responders are notified, the greater the chances your loved ones and possessions will remain safe. Whether you are traveling, sleeping or shopping, your security system is always working to protect you from the number-one intruder – fire! Fact: Cooking is the leading cause of fires and injuries in single and multifamily homes. With smoke and fire alarm systems from Alliance Security, help can be on the way in no time!

**What sets our monitoring apart from others?**

**More about Monitronics**

*"Monitronics is a company with 15 years of experience protecting homes and businesses with our award-winning alarm monitoring services. More than 700,000 people trust us to protect what matters to them."*

> *"Headquartered in Dallas, Texas, Monitronics is one of the nation's largest, fastest-growing home security alarm monitoring companies. And we're the only ones who work solely through our network of nationwide, independent authorized dealers. Together, we provide reliable, uninterrupted security monitoring service."*

> *"Monitronics is a recognized industry leader. Our Central Alarm Monitoring Station is 5-Diamond Certified and we were named 2008 Provider of the Year by Frost & Sullivan. We were even named by Inc. 500 a Fastest Growing Company an award-winning seven years in a row—we're in their Hall of Fame for it."*

> *"From our humble beginnings to our present strength, we have been leading the industry in innovation. We were among the first to utilize two-way voice alarm monitoring and we continue to be a principal in that alarm application with almost 250,000 customers using it. Integrated fire and carbon monoxide protection sync flawlessly with many of our systems. Our new video monitoring through Alarm.com has iPhone and BlackBerry applications so that customers can look in on their space in real time. We continuously investigate cutting-edge services that position us as innovators."*

> *"At the heart of our operations is the Monitronics Central Station, which has consistently met or exceeded all UL, National Fire Protection Association, Central Station Alarm Association standards. With millions invested in our monitoring technology, we can provide reliable, uninterrupted security monitoring service."*

51.    In or about the period between approximately October, 2013, and May, 2014, Defendants, or one or more third parties acting on their behalf, placed, to Bank's residential telephone line, dozens of Security-System Robocalls.

52.    Neither Bank nor the other Class Members had given anyone prior express invitation or permission to place the Security-System Robocalls to them.

53.    Neither Bank nor the other Class Members had an established business relationship with Defendants or the lead generators at the time of the placement of the Security-System Robocalls.

54.    In or about December, 2013, Alliance Security, then under the name of Versatile

Marketing Solutions, Inc., settled the matter of *UNITED STATES OF AMERICA v. VERSATILE MARKETING SOLUTIONS, INC., a Massachusetts corporation, also doing business as VMS Alarms, VMS, Alliance Security, and Alliance Home Protection, and JASJIT GOTRA, individually and as an officer of Versatile Marketing Solutions, Inc.*, No. 1:14-cv-10612 (D. Mass.; Saris, *C.J.*), which included, *inter alia*, a contingent and suspended judgment against the defendants for $3.4 million, a payment of $320,700 to the Treasurer of the United States; and maintenance of all records relating to lead generators from whom the defendants purchase leads for telemarketing, including contracts with such lead generators.

## FIRST CAUSE OF ACTION

55.   Plaintiff repeats and re-alleges, and incorporates herein, each  and every allegation contained in paragraphs "1" through "54" inclusive of this Complaint as if fully set forth herein.

56.   The placement of Security-System Robocalls to Plaintiff and the other Members of the Federal Class, as set forth herein, violated 47 U.S.C. § 227(b)(1).

57.   Plaintiff and Members of the Federal Class are entitled to statutory damages of $500 per violation pursuant to 47 U.S.C. §§ 227(b)(3)(B).

58.   In the event that Defendants willfully or knowingly violated 47 U.S.C. § 227(b)(1), Plaintiff and the other members of the Federal Class are entitled to up an additional $1,000 per violation pursuant to 47 U.S.C. §§ 227(b)(3)(C).

59.   Plaintiff and the other Members of the Federal Class are entitled to an Order, pursuant to 47 U.S.C. § 227(b)(3)(A), enjoining Defendants from violating 47 U.S.C. § 227(b)(1).

## SECOND CAUSE OF ACTION

60.   Plaintiff repeats and re-alleges, and incorporates herein, each  and every allegation contained in paragraphs "1" through "54" inclusive of this Complaint as if fully set forth herein.

61.     Defendants, by engaging in the practices set forth herein, violated New York General Business Law § 349(a), wrongfully depriving Plaintiff and the other Members of the New York Class of their property.

62.     Plaintiff and the other Members of the New York Class are, pursuant to General Business Law § 349(h), entitled to statutory damages of $50 per violation.

63.     Plaintiff and the other Members of the New York Class are entitled to an Order, pursuant to New York General Business Law §349(h), enjoining Defendants from violating New York General Business Law § 349(a).

64.     Plaintiff and the other Members of the New York Class are entitled to reasonable legal fees pursuant to New York General Business Law § 349(h).

### THIRD CAUSE OF ACTION

65.     Plaintiff repeats and re-alleges, and incorporates herein, each  and every allegation contained in paragraphs "1" through "54" inclusive of this Complaint as if fully set forth herein.

66.     Defendants, by engaging in false advertising as set forth herein, violated New York General Business Law § 350, wrongfully deprived Plaintiff and the other Members of the New York Class of their property.

67.     Plaintiff and the other Members of the New York Class are, pursuant to General Business Law § 350-e(3), entitled to statutory damages of $500 per violation.

68.     Plaintiff and the other Members of the New York Class are entitled to an Order, pursuant to New York General Business Law § 350-e(3), enjoining Defendants from violating New York General Business Law § 350.

69.     Plaintiff and the other Members of the New York Class are entitled to reasonable legal fees pursuant to New York General Business Law § 350-e(3).

## FOURTH CAUSE OF ACTION

70.     Plaintiff repeats and re-alleges, and incorporates herein, each  and every allegation contained in paragraphs "1" through "54" inclusive of this Complaint as if fully set forth herein.

71.     The placement of Security-System Robocalls to Plaintiff and the other Members of the New York Class, as set forth herein, violated New York General Business Law § 399-p(3)(a).

72.     Plaintiff and the other Members of the New York Class are entitled to statutory damages of $50 pursuant to New York General Business Law § 399-p(9).

73.     Plaintiff and the other Members of the New York Class are entitled to an Order, pursuant to New York General Business Law § 399-p(9), enjoining Defendants from violating New York General Business Law § 399-p(3)(a)

74.     Plaintiff and the other Members of the New York Class are entitled to reasonable legal fees pursuant to New York General Business Law § 399-p(9).

## CLASS ALLEGATIONS

75.     Plaintiff brings this action as a Class Action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3) on behalf of all persons to whose residential or cellular telephone number Defendants, or third parties acting with the authorization of Defendants, placed one or more Security-System Robocalls (the "Federal Class"), during the period beginning four years prior to the commencement of this action until the date of said commencement (the "Federal Class Period").

76.     Plaintiff also brings this action as a Class Action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3) on behalf of all persons who received a Security-System Robocall on a New York telephone number (*i.e.* a telephone number having an area code of 212, 315, 347, 516, 518, 585, 607, 632, 656, 716, 718, 845, 914, 917, or 929 (the "New York Class"), during the period beginning three years prior to the commencement of this action until the date on which this action

14

is commenced (the "New York Class Period").

77.     Plaintiff believes that there are thousands of individuals whose claims are similar to Plaintiff's claims, and, furthermore, that Plaintiff's claims are typical of the claims of absent Class Members. Members of each Class have sustained damages arising out of Defendants' wrongful conduct in the same manner in which Plaintiff has sustained damages arising out of Defendants' unlawful conduct.

78.     Plaintiff will fairly and adequately protect the interests of each Class. Plaintiff has no interests that are antagonistic to, or in conflict with, the Members of the Classes. Indeed, Plaintiff's interests are, for purposes of this litigation, coincident with the interests of the other Class Members.

79.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Because each of the Classes are so numerous that joinder of all Members is impracticable, and because the damages suffered by most of the individual Members of the Classes are too small to render prosecution of the claims asserted herein economically feasible on an individual basis, the expense and burden of individual litigation makes it impractical for Members of the Classes to adequately address the wrongs complained of herein. Plaintiff knows of no impediments to the effective management of this action as a class action.

80.     Common questions of law and fact predominate over questions that affect only individual Federal Class Members. Among those questions are:

(i)      whether Defendants, or third parties acting with the authorization of Defendants, placed telephone calls using an artificial or prerecorded voice that delivered a message to residential or cellular telephone lines;

(ii)     whether the telephone calls at issue violated the TCPA;

(iii)    whether Defendant willfully or knowingly violated the TCPA;

(iv)    whether the Members of the Federal Class are entitled to

damages as a result of Defendants' violations of the TCPA, and, if so, how much; and

(v)     whether the Members of the Federal Class are entitled to injunctive relief as a result of Defendants' violations of the TCPA.

81.     Common questions of law and fact predominate over questions that affect only

individual New York Class Members. Among those questions are:

(i)     whether Defendants violated New York General Business Law Section 349(a);

(ii)    whether Defendants violated New York General Business Law Section 350

(iii)   whether Defendants violated New York General Business Law Section 399-p(3)(a);

(iv)    whether the Members of the New York Class are entitled to damages as a result of Defendants' violations of the New York General Business Law;

(v)     whether the Members of the New York Class are entitled to injunctive relief as a result of Defendants' violations of the New York General Business Law; and

(v)     whether the Members of the New York Class are entitled to reasonable legal fees as a result of Defendants' violations of the New York General Business Law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

(a)      Pursuant to 47 U.S.C. § 227(b)(3)(B), statutory damages of $500 per violation of 47 U.S.C. § 227(b)(1) for Plaintiff and the other Members of the Federal Class;

(b)      Pursuant to 47 U.S.C. § 227(b)(3)(C), up to $1,000 of statutory damages for Plaintiff and the other Members of the Federal Class, in addition to the statutory damages prayed for in the aforementioned paragraph, if the Court finds that Defendants' violations were made knowingly or willfully;

(c)      Pursuant to 47 U.S.C. § 227(b)(3)(A), an order enjoining Defendants from violating 47 U.S.C. § 227(b)(1);

(d)      Pursuant to New York General Business Law § 349(h), damages of $50 per violation of New York General Business Law § 349(a) for Plaintiff and the other Members of the New York Class;

(e)      Pursuant to General Business Law § 349(h), reasonable legal fees for Plaintiff and the other Members of the New York Class;

(f)      Pursuant to New York General Business Law § 350-e(3), damages of $500 per violation of New York General Business Law § 350 for Plaintiff and the other Members of the New York Class;

(g)      Pursuant to New York General Business Law § 350-e(3), an order enjoining Defendants from violating New York General Business Law § 350;

(h)      Pursuant to General Business Law § 350-e(3), reasonable legal fees for Plaintiff and the other Members of the New York Class;

(i)      Pursuant to New York General Business Law § 399-p(9), damages of $50 per

violation of New York General Business Law § 399-p(3)(a) for Plaintiff and the other Members of the New York Class;

(j)     Pursuant to New York General Business Law § 399-p(9), an order enjoining Defendants from violating New York General Business Law § 399-p(3)(a);

(k)     Pursuant to General Business Law § 350-e(3), reasonable legal fees for Plaintiff and the other Members of the New York Class; and

(l)     An award, to Plaintiff and the other Members of each Class, of the costs and disbursements of this action, and reasonable legal fees, and such other and further relief as this Court deems just and proper.

Dated:  July 22, 2014

Yours, etc.,

TODD C. BANK, ATTORNEY AT LAW, P.C.
Todd C. Bank (TB-6825)
119-40 Union Turnpike
Fourth Floor
Kew Gardens, New York 11415
(718) 520-7125

*Counsel to Plaintiff*