IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| IN RE MONITRONICS INTERNATIONAL, INC. TELEPHONE CONSUMER PROTECTION ACT LITIGATION | ) Civil Action No. 1:13-md-2493-IMK<br>)<br>) (THIS DOCUMENT RELATES<br>)   TO ALL CASES)<br>) |

**DEFENDANT MONITRONICS INTERNATIONAL, INC.'S RESPONSE TO FEBRUARY 4, 2015 ORDER REGARDING PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS BY NON-PARTY COMPLIANCEPOINT, INC.**

### I. INTRODUCTION

Defendant Monitronics International, Inc. ("Monitronics") did not oppose or otherwise respond to Plaintiffs' motion to compel non-party CompliancePoint, Inc. ("CompliancePoint") to produce documents related to Defendant ISI Alarms NC, Inc. ("ISI") as the portion of Plaintiffs' subpoena related to ISI neither sought documents from Monitronics nor sought documents over which Monitronics claims a privilege. Thus, Monitronics understood it did not have standing to respond to the motion.[1]

Despite ISI's lack of response, the Court should not simply grant Plaintiffs' motion. As a procedural matter, the motion is not properly before this Court. Plaintiffs' subpoena sought the production of documents in the Northern District of Georgia. Pursuant to Federal Rule of Civil Procedure 45(d)(2)(B)(i), the motion should have been filed in that district.

In addition, Plaintiffs' motion is based, in part, on the incorrect assertion that a number of the ISI documents are not privileged because they were shared with Monitronics' Director of Legal Compliance, Jenny McCarley. However, the ISI documents that were purportedly shared

---

[1] As outlined further below, Plaintiffs' subpoena also seeks documents related to Monitronics and Monitronics maintains that some of these documents are privileged or protected by the work-product doctrine. The motion is not directed to any of Monitronics' positions with respect to the documents related to it.

with Ms. McCarley were provided on dates prior to her employment and the existence of her position with Monitronics. Moreover, Monitronics was not involved in any business relations between CompliancePoint and ISI. Thus, Ms. McCarley could not have been the recipient of these documents and Monitronics' counsel advised Plaintiffs of this prior to the filing of this motion.

Finally, Plaintiffs' contention that, by asserting a safe-harbor defense, ISI has waived any privilege that might apply misstates the law and cannot be decided on the limited information before the Court.[2] Simply asserting a safe-harbor defense does not result in a waiver. Rather, waiver of the attorney-client privilege in the TCPA context has been found when the defense has been asserted *and* attorneys are active participants in the compliance activities that are the basis of the defense. There is insufficient information at this juncture to determine whether ISI's counsel was advising on compliance issues, which would be privileged, or actually engaged in compliance activities which may result in a waiver. For these reasons, Plaintiffs' motion should be denied.

## II. ADDITIONAL PROCEDURAL AND FACTUAL INFORMATION

### A. Plaintiffs' Subpoena Sought Production Of Documents In The Northern District of Georgia And Plaintiffs Incorrectly Claim ISI Documents Were Shared With Monitronics

CompliancePoint is a marketing consulting company based in Duluth, Georgia. Among the services CompliancePoint offers is telemarketing compliance auditing, training and consulting. CompliancePoint is a wholly-owned subsidiary of PossibleNow, Inc., also based in Georgia. CompliancePoint is not a party to any of the actions comprising this multidistrict

---

[2] Plaintiffs contend a similar waiver has been made by Monitronics which Monitronics disputes

litigation docket ("MDL"). Since mid-2013, CompliancePoint has provided consulting services directly to Monitronics. CompliancePoint has apparently also provided services to ISI, though Monitronics was not involved in any of the dealings between those two entities.

Plaintiffs' subpoena to CompliancePoint was served on April 14, 2014 through service on a David J. Reed in Roswell, Georgia. (Ex. B to Plaintiffs' Motion at 2, 7.) The subpoena sought the production of documents in Roswell. Thus, the Northern District of Georgia is the court in which Plaintiffs should seek to compel the production of documents from CompliancePoint. (*See* Fed.R.Civ.P. 45(d)(2)(B)(i) ["serving party may move the court for the district where compliance is required for an order compelling production...."].) Plaintiffs' counsel is well aware this is not the proper jurisdiction. In their discussions with CompliancePoint and Monitronics regarding the documents sought in the subpoena that relate to Monitronics and possible motion practice, Plaintiffs' counsel advised:

> Plaintiffs will file their motion to compel in the Northern District of Georgia under Federal Rule of Civil Procedure 45(d)(2)(B)(i). Plaintiffs will ask the Northern District of Georgia to transfer their motion to compel to the Northern District of West Virginia under Rule 45(f). Please let me know whether CompliancePoint will agree to a transfer. Plaintiffs believe that pendency of multi-district litigation against Monitronics—the party that holds the purported privileges—constitutes extraordinary circumstances sufficient to justify transfer without CompliancePoint's consent. *See* Fed. R. Civ. P. 45(f).

(Letter, B. Terrell to M. Maneker & M. Shuster, November 5, 2014, attached at Ex. A.) To Monitronics' knowledge, CompliancePoint has not agreed to such a transfer.[3] Nonetheless, without explanation, Plaintiffs filed their Motion to Compel Production of ISI Documents on CompliancePoint's Privilege Logs ("Plaintiffs' Motion") in this Court.

---

[3] For this reason, Plaintiffs' invocation of the Local Rules of this District as governing CompliancePoint's response to the subpoena is misplaced. (*See* Plaintiffs' Motion at 3.)

In addition to having filed their motion in the wrong jurisdiction, Plaintiffs base it, at least in part, on an incorrect premise. Plaintiffs argue that a number of the ISI documents they seek cannot be privileged because, according to the privilege logs provided by CompliancePoint, there are "numerous documents sent to or from at least one individual who is not an employee of either ISI or CompliancePoint -- Ms. Jenny McCarley, director of legal compliance for Monitronics." (Plaintiffs' Motion at 8.) Plaintiffs refer to 14 documents that appear to have been created between September 14, 2012 and February 15, 2013. (Ex. D to Plaintiffs' Motion at 2-4.) However, as Monitronics informed Plaintiffs' counsel, the position of Director of Legal Compliance was not created, and Ms. McCarley was not employed, by Monitronics until the fall of 2013. Thus, the references to Ms. McCarley having received documents related to ISI appear to be incorrect, at least with respect to Ms. McCarley's role. Monitronics' counsel advised Plaintiffs of this verbally and in writing in early January. (Letter, M. Maneker to B. Terrell, Jan. 8, 2015, the body of which is attached as Ex. B.) Nonetheless, Plaintiffs filed their motion, having conducted no additional discovery.

### B. Plaintiffs' Subpoena Also Seeks Documents From CompliancePoint That Monitronics Maintains Are Protected

Prior to its engagement directly by Monitronics in the second half of 2013, CompliancePoint was retained by counsel for Monitronics, Latham & Watkins ("Latham"), to aid the latter in recommending and developing a coordinated legal strategy related to various telemarketing issues involving its authorized dealers as well as pending or threatened litigation. CompliancePoint assisted Latham in the conduct of a baseline investigation of the practices of Monitronics' largest dealers who were engaged in telemarketing activities. In addition, CompliancePoint and Latham conducted a series of field audits and jointly drafted reports summarizing their results.

In addition to documents regarding ISI, Plaintiffs' subpoena seeks documents from CompliancePoint regarding Monitronics and several of its dealers. (Ex. B to Plaintiffs' Motion at 4.) In addition to the two privilege logs identifying documents regarding ISI, CompliancePoint provided nine (9) privilege logs in response to Plaintiffs' subpoena listing documents related to its work directly for Monitronics as well as its work for Latham in 2012 and 2013. Monitronics maintains that the latter category of documents is protected by the attorney-client privilege and/or work-product doctrine. Thus, while Monitronics is not directly impacted by the instant motion, issues of privilege have also arisen with respect to Monitronics in connection with Plaintiffs' subpoena.

Monitronics' position regarding the protected nature of some of the documents sought is based on the long-held principle that confidential communications with professionals employed or retained by counsel to assist in rendering legal advice are privileged attorney-client communications. (*U.S. v. Kovel*, 296 F.2d 918, 921 (2d Cir. 1961); *see also U.S. v. Bornstein*, 977 F.2d 112 (4th Cir. 1997) [adopting *Kovel* doctrine].) CompliancePoint's communications with it and others under the direction of Latham to assist it in providing legal advice are, thus, privileged, as are any documents related to such communications. Similarly, the work of a party or its agents undertaken in anticipation of litigation is protected from disclosure by the work-product doctrine. (Fed.R.Civ.P. 26(b)(3).) The doctrine protects the content of witness interviews conducted by a party representative, (*In re Terrorist Attacks on September 11, 2001*, 2008 U.S.Dist. LEXIS 45751, *16-20 (S.D.N.Y. 2008)), as well as email correspondence with potential witnesses. (*Gerber v. Down E. Cmty. Hosp.*, 266 F.R.D. 29, 33-34 (D.Me. 2010).)

Over the last several months, counsel for Monitronics, Plaintiffs and CompliancePoint have been engaged in discussions regarding Monitronics' assertion of privilege over certain

documents sought by the subpoena to CompliancePoint. If these entities are unable to resolve the issues related to these documents, they may need the Court's assistance in doing so.

### III. MONITRONICS DID NOT OPPOSE PLAINTIFFS' MOTION AS IT DID NOT HAVE STANDING TO DO SO AND LACKS INFORMATION REGARDING THE DOCUMENTS AT ISSUE

In this motion, Plaintiffs seek "to compel CompliancePoint's responses" to Plaintiffs' April 10, 2014 subpoena by having CompliancePoint produce "110 responsive documents over which ISI asserts attorney-client privilege." (Plaintiffs' Motion at 1.) The subpoena Plaintiffs seek to enforce was not issued to or served on Monitronics. Moreover, Monitronics was not involved in CompliancePoint's provision of services to ISI. Monitronics does not claim any privilege or proprietary or other interest in the ISI documents sought.

Monitronics considered any opposition it might have to Plaintiffs' motion to compel to be akin to moving to quash Plaintiffs' subpoena. Monitronics lacks standing to seek such relief. "The law is clear, absent a claim of privilege, a party has no standing to challenge a subpoena to a nonparty." (*Donahoo v. Ohio Dept. of Youth Services*, 211 F.R.D. 303, 306 (N.D. Ohio 2002); *see also Robertson v. Cartinhour*, 2010 U.S. Dist. LEXIS 16058, *2 (D. Md. 2010) [describing rule in Fourth Circuit to be that "[a] party does not have standing to challenge a subpoena issued to a non-party 'unless the party claims some personal right or privilege in the information sought by the subpoena.'"].) That is because "[t]he party to whom the subpoena is directed is the only party with standing to oppose it." (*Donahoo,* 211 F.R.D. at 306.) Thus, a defendant "does not have standing to challenge the subpoenas issued to and served upon [the] three nonparty witnesses" and a motion to quash such subpoenas will be denied. (*Id.*; *see also White Mule Co. v. ATC Leasing Co., LLC*, 2008 U.S.Dist. LEXIS 51344, *12 (N.D. Ohio 2008) [denying motion to quash Plaintiffs' subpoenas seeking documents from third-party manufacturers].)

In addition to believing it would be procedurally inappropriate, Monitronics did not respond to Plaintiffs' motion as it is not able to address whether or not the ISI documents Plaintiffs seek are actually privileged. Monitronics does note that, while it is not clear what services it provided ISI, CompliancePoint's privilege logs indicate that the ISI documents contain a significant amount of correspondence between CompliancePoint and ISI's litigation counsel, Robert Newkirk, (*see* Ex. E to Plaintiffs' Motion at 3-5, 7-14, 16-18), and, thus, could very well constitute or reflect attorney work-product or attorney-client communications.

### IV. THE COURT SHOULD NOT FIND A WAIVER OF PRIVILEGE ON THIS RECORD

In addition to the procedural and factual flaws in Plaintiffs' motion, their primary legal argument is misplaced, at least as it is based on the current record. Plaintiffs contend that ISI has waived any protections that would be otherwise accorded the CompliancePoint documents related to it because ISI has asserted a "safe harbor" defense. (Plaintiffs' Motion at 4-6.)

As a preliminary matter, Plaintiffs overstate the ruling of the Central District of Illinois in *U.S. v. Dish Network*, 283 F.R.D. 420, 424 (C.D.Ill. 2012). That court did not hold, as Plaintiffs contend, "that a defendant's assertion of [the] safe harbor defense… waives the attorney-client privilege for communications pertaining to that defense." (Plaintiffs' Motion at 5.) Rather, the *Dish Network* court found that, because "Dish's *attorneys actively participated in monitoring compliance*,… [t]he privilege is, therefore, waived as to evidence relevant to Dish attorneys' monitoring of compliance with Dish's procedures." (*Dish Network*, 283 F.R.D. at 424 [emphasis added].) The court found that counsel "investigated consumer complaints," "arranged for consumers to participate in sting operations," and "reviewed and approved scripts for compliance." (*Id.*) It was because of these activities that the court held Plaintiffs "were entitled to 'probe the substance'" of the defendant's compliance program in order "'to determine its

sufficiency.'" However, the court also stated that, if Dish's counsel "did not participate in performing monitoring," but, rather had "just provide[d] advice that is relevant to the monitoring and compliance functions," the privilege would not have been waived." (*Id.*) Thus, it is not simply the assertion of the safe harbor defense that results in a waiver of privilege, as Plaintiffs contend. Rather, the attorneys of the defendant asserting the defense must be performing the activities defendant claims provide the safe harbor.

Applying that criteria to these circumstances, ISI has not yet had occasion to identify what activities comprise its safe harbor defense. Moreover, there is no information as to whether CompliancePoint and/or its counsel participated in any particular activity. Indeed, Plaintiffs themselves note that "the precise nature of ISI's relationship with CompliancePoint is unclear." (Plaintiffs' Motion at 3.) Thus, at least at this juncture, there is insufficient information to determine whether a waiver of ISI's attorney-client protection has occurred.

## V. CONCLUSION

Monitronics did not initially respond to Plaintiffs' motion to compel CompliancePoint to produce the documents related to ISI as it did not believe it had standing to do so and it does not have information regarding the documents sought. Having been requested by the Court to respond, Monitronics does want to apprise the Court that it asserts that certain documents also sought in Plaintiffs' subpoena as to it are protected. In addition, Monitronics calls to the Court's attention that Plaintiffs' motion should have been brought in the Northern District of Georgia and that Plaintiffs' motion is based, in part, on the incorrect assertion that the ISI documents were shared with Monitronics' Director of Legal Compliance. Finally, Plaintiffs incorrectly claim that ISI has waived any attorney-client privilege simply by asserting the safe harbor defense. For these reasons, Plaintiffs' motion should be denied.

MONITRONICS INTERNATIONAL, INC.

BY: _____
One of its attorneys

Jeffrey A. Holmstrand (#4893)
FLAHERTY SENSABAUGH BONASSO PLLC
1225 Market Street
P.O. Box 6545
Wheeling, WV 26003
(304) 230-6600

Benjamen S. Dyer *(admitted pro hac vice)*
Margaret Carlson *(admitted pro hac vice)*
CULP & DYER, L.L.P.
222 E. McKinney Street, Suite 210
Denton, TX 76201
(940) 484-2236

Meryl C. Maneker *(admitted pro hac vice)*
WILSON TURNER KOSMO LLP
550 West C Street, Suite 1050
San Diego, CA 92101
(619) 236-9600

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| IN RE MONITRONICS INTERNATIONAL, INC. TELEPHONE CONSUMER PROTECTION ACT LITIGATION | ) Civil Action No. 1:13-md-2493-IMK<br>)<br>) (THIS DOCUMENT RELATES<br>)  TO ALL CASES)<br>) |

## CERTIFICATE OF SERVICE

Service of *DEFENDANT MONITRONICS INTERNATIONAL, INC.'S RESPONSE TO FEBRUARY 4, 2015 ORDER REGARDING PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS BY NON-PARTY COMPLIANCEPOINT, INC.* was had upon the following via the CM/ECF system this 13th day of February, 2015:

Gordon H. Copland
STEPTOE & JOHNSON, PLLC
400 White Oaks Blvd.
Bridgeport, WV 26330

John R. Teare, Jr.
SPILMAN THOMAS & BATTLE PLLC
300 Kanawha Boulevard, East
Charleston, WV 25301

Christina S. Terek
SPILMAN THOMAS & BATTLE, PLLC
1233 Main Street, Suite 4000
P.O. Box 831
Wheeling, WV 26003

Edward A. Broderick
Anthony I. Paronich
LAW OFFICES OF EDWARD A. BRODERICK
125 Summer Street, Suite 1030
Boston, MA 02110

Matthew P. McCue
LAW OFFICE OF MATTHEW P MCCUE
1 South Avenue, Suite 3
Natick, MA 01760

John W. Barrett
Jonathan R. Marshall
BAILEY & GLASSER, LLP
209 Capitol Street
Charleston, WV 25301

Beth E. Terrell
TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th St., Ste 300
Seattle, WA 98103-8869

Jeffrey L. Poston
CROWELL & MORING LLP
1001 Pennsylvania Avenue NW
Washington, DC 20004

Charles R. Pinkerton
PINKERTON LAW PRACTICE, PLLC
918 Alpine Street
Morgantown, WV 26505

Daniel A. Edelman
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 South Clark Street, Suite 1500
Chicago, IL 60603

John P. Wolff, III
KEOGH COX & WILSON
701 Main Street
Baton Rouge, LA 70802

Robert B. Newkirk, III
NEWKIRK LAW OFFICE, P.A.
P.O. Box 2536
19810 W. Catawba Avenue
Cornelius, NC 28031

Harry F. Bell, Jr.
THE BELL LAW FIRM PLLC
P.O. Box 1723
Charleston, WV 25326

2

Alexander Macia
SPILMAN THOMAS BATTLE PLLC
300 Kanawha Blvd. East
P.O. Box 273
Charleston, WV 25321-0273

Lauri A. Mazzuchetti
Michael A. Innes
KELLEY DRYE & WARREN
200 Kimball Drive
Parsippany, NJ 07054

Brian K. Murphy
Joseph F. Murray
MURRAY MURPHY MOUL & BASIL
1533 Lake Shore Drive
Columbus, OH 43204

Sergei Lemberg
LEMBERG & ASSOCIATES
1100 Summer Street, 3rd Floor
Stamford, CT 06905

Daniel J. Williams
Law Offices of Daniel J. Williams
402 West Broadway, Suite 1100
San Diego, CA 92101

Seyed Abbas Kazerounian
KAZEROUNI LAW GROUP, APC
245 Fischer Avenue, Suite D1
Costa Mesa, CA 92626

Service of *DEFENDANT MONITRONICS INTERNATIONAL, INC.'S RESPONSE TO FEBRUARY 4, 2015 ORDER REGARDING PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS BY NON-PARTY COMPLIANCEPOINT, INC.* was had upon the following by sending a true copy thereof by regular mail, postage prepaid, at their last known address this 13th day of February, 2015, as follows:

Craig Cunningham, *Pro Se*
5543 Edmondson Pike, Suite 248
Nashville, TN 37211

Todd C. Bank, *Pro Se*
119-40 Union Turnpike, 4th Floor
Kew Gardens, NY 11415

MONITRONICS INTERNATIONAL, INC.

By: _____
One of its attorneys

Jeffrey A. Holmstrand (#4893)
FLAHERTY SENSABAUGH BONASSO PLLC
1225 Market Street
P.O. Box 6545
Wheeling, WV 26003
(304) 230-6600

Benjamen S. Dyer (*admitted pro hac vice*)
Margaret Carlson (*admitted pro hac vice*)
CULP & DYER, L.L.P.
222 E. McKinney Street, Suite 210
Denton, TX 76201
(940) 484-2236

Meryl C. Maneker (*admitted pro hac vice*)
WILSON TURNER KOSMO LLP
550 West C Street, Suite 1050
San Diego, CA 92101
(619) 236-9600